**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Todd Wills, | No. CV-17-02994-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Todd Wills applied for disability insurance benefits and for a period of disability, alleging disability beginning May 11, 2011. (A.R. 14.) The claim was denied initially on January 9, 2014, and upon reconsideration on April 24, 2014. (*Id.*) Plaintiff then requested a hearing. (*Id.*) On October 16, 2015, Plaintiff and a vocational expert (VE) testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 39-81.) At the hearing, Plaintiff amended his alleged disability onset date to May 1, 2012. (*Id.* at 14.)

On February 18, 2016, the ALJ issued a written decision finding Plaintiff not disabled within the meaning of the Social Security Act, which became the Commissioner's final decision when the Appeals Council denied review. (*Id.* at 1-3.) On September 1, 2017, Plaintiff sought review by this Court. (Doc. 1.) After receipt of the administrative record (Doc. 11), the parties fully briefed the issues for review (Docs. 13-14). For reasons stated below, the Court affirms the Commissioner's decision.

## I. Background

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ found that Plaintiff last met the insured status requirements on December 31, 2015, and did not engage in substantial gainful activity during the period from May 1, 2012 through December 31, 2015. (A.R. 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: history of ulcerative colitis; degenerative disc disease of the cervical spine; cervical spondylosis; history of bilateral inguinal hernias; and status-post laparoscopic bilateral inguinal hernia repair. (*Id.*) At step three, the ALJ determined that Plaintiff's listed impairments did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 20.) At step four, the ALJ found that Plaintiff:

> has the [RFC] to perform a range of light work . . . . Specifically, the claimant can lift and carry 25 pounds

occasionally and 25 pounds frequently; stand and/or walk for six hours; sit for six hours; and requires ready access to a restroom, which is defined as within a five-minute walk of his workstation.

(*Id.* at 20.)  Based on this RFC, the ALJ found that Plaintiff is able to perform his past relevant work as an automobile tester and industrial arts teacher.  (*Id.* at 25.)  Accordingly, the ALJ found Plaintiff not disabled.  (*Id.* at 26.)

## II.  Standard of Review

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled.  Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.*  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Id.*  The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  *Id.*  Nor may the court "affirm the ALJ on a ground upon which he did not rely."  *Id.*

## III.  Discussion

Plaintiff argues that the ALJ erred at step two by finding Plaintiff's cognitive and depressive disorders non-severe.  Plaintiff also challenges whether the ALJ's RFC determination is supported by substantial evidence.  Specifically, Plaintiff contends that the ALJ improperly weighed treating physician opinions and rejected his symptom testimony.

### A.  The ALJ Did Not Err at Step Two

The step two inquiry is a de minimis screening device to dispose of groundless claims.  *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).  Its purpose "is to do no more than allow the [Commissioner] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working."  Titles

II & XVI: Med. Impairments That Are Not Severe, SSR 85-28 (S.S.A. 1985) (internal quotation omitted). Agency regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities." §§ 404.1521(a), 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. §§ 404.1521(b), 416.921(b).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The Court therefore must determine whether substantial evidence supports the ALJ's finding that the medical evidence clearly established that Plaintiff did not have a medically severe impairment or combination of impairments. *Id.* "The existence of objective medical evidence of a serious impairment [is] enough to clear the de minimis threshold and result in reversal of the ALJ's decision." *Young v. Colvin*, No. 16-CV-2264-DGC-PHX, 2017 WL 677167, at *3 (D. Ariz. Feb. 21, 2017) (discussing standard at step-two under *Webb*, 433 F.3d at 687).

In Plaintiff's case, there is not objective evidence that his depressive and cognitive disorders were greater than a slight abnormality and that his impairments caused more than minimal effects of his ability to conduct basic work activities. Plaintiff contends that "the ALJ did not identify or discuss, at all, the neuropsychological evaluation of Dr. Kirlin." (Doc. 17 at 3.) But the record shows that the ALJ considered Dr. Kirlin's neuropsychological examination, as her decision both cites to and references results from the examination report. (A.R. 24.) Notably, the ALJ highlighted that Plaintiff's "attention span, working memory, verbal abstraction, cognitive flexibility and problem solving were all within normal expectations for his age." (*Id.*) This language served as part of the basis

for the ALJ's finding that Plaintiff's cognitive and depressive disorders were not severely limiting.

The ALJ also noted that Dr. Mather, the psychological consultative examiner "made no[] mental diagnosis and did not opine any mental limitations[;]" the state agency psychological consultants determined Plaintiff had mild restriction of activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, and pace; and that Plaintiff's medical records reflected "sparse" mental health treatment. (*Id.* at 19.) Moreover, Plaintiff fails to connect the results of neuropsychological exam with limitations on work activities.[1] The Court finds no step two error.[2]

## B. ALJ Properly Discounted Treating Physicians' Opinions

Dr. Smith, Plaintiff's former treating physician, submitted multiple opinions regarding Plaintiff's functional capabilities. (A.R. at 530-33.) Dr. Smith opined that Plaintiff had mild restrictions in activities involving: unprotected heights, being around moving machinery, driving automotive equipment, and exposure to dust, fumes, and gases. (*Id.* at 531.) Plaintiff had moderate restrictions in activities involving exposure to marked change in temperature or humidity. (*Id.*) Despite these benign findings, Dr. Smith opined that Plaintiff's "degree of restriction" was severe and that he would be "off task greater than 21% of an 8-hour work day." (*Id.*) Dr. Smith indicated that Plaintiff could experience bowel movements up to 10 times per day as a result of his ulcerative colitis. (*Id.* at 530.)

Likewise, Dr. Winscott, rendered an opinion that Plaintiff's limitations were severe. (*Id.* at 615-618.) Dr. Winscott also opined that in an 8-hour work day, Plaintiff could sit less than 2 hours, stand/walk less than 2 hours, lift and carry more than 30 pounds but less

---

[1] Plaintiff also contends that the ALJ failed to properly consider that Plaintiff's treating internist found that he would be off task for greater than 21% of a workday, in part due to concentration difficulties and severe fatigue. (Doc. 17 at 3.) A treating providers opinion is not binding on an ALJ with respect to the existence of an impairment, *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2005), nor does it constitute objective medical evidence, *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005).

[2] Although the Court found that the ALJ did not err at step two, any err would have been harmless because at step four the ALJ discussed and considered the limitations caused by Plaintiff's depressive and cognitive disorders. (A.R. at 24); *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)

than 50. (*Id.* at 617.) She reported that it was medically necessary for Plaintiff to alternate between sitting, standing, and walking every hour, but that he could frequently could bend, reach, and stop. (*Id.*) Dr. Winscott also indicated that Plaintiff's symptoms of pain and fatigue resulted in only a mild limitation. (*Id.* at 618.) Notably, Dr. Winscott's opinion was accompanied by a note that she was completing the form in place of Dr. Smith who had retired, at that point in time she had never treated or supervised treatment of Plaintiff, and her opinions were based on her review of Plaintiff's medical chart. (*Id.*at 616-618.) The ALJ assigned little weight to both of these opinions. (*Id.* at 24-25.)

A treating physician's opinion generally is entitled to deference. *See Lester v Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight typically should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Thus, where a treating physician's opinion is not contradicted by another physician it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it still may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[3] *Lester*, 81 F.3d at 830. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation and citation omitted).

After discussing Plaintiff's medical history and treatments in detail, the ALJ found the opinions of Drs. Smith and Winscott inconsistent with the medical records.

_____

[3] The parties appear to agree that the specific and legitimate standard applies. As the Court has previously explained, it "has yet to encounter a case in which an ALJ's stated reasons for rejecting a treating physician's opinion, though supported by substantial evidence, were specific but not clear, or were legitimate but not convincing." *Moore v. Comm'r of Soc. Sec. Admin.*, No. 16-CV-3445-PHX-DLR, 2017 WL 6379920, at *5 (Dec. 14, 2017). In any event, this is of no moment here because courts have found that discrepancy between an opinion and the underlying medical records is both clear and convincing and specific and legitimate. *See,e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (clear and convincing); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Specifically, the ALJ found that the ultimate conclusions that "[Plaintiff] would be off task greater than 21 percent of an eight-hour workday. . . overly restrictive in light of the relatively stable symptoms and . . . are not consistent with [Plaintiff's] presentation [and] reports to treating medical professionals[.]" (A.R. 25.) This reason is specific and legitimate. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ's reason is supported by substantial evidence. For example, Dr. Smith took clinical notes on the same day that she rendered her opinion. These notes reflect that, although there is variability in symptoms, Plaintiff's ulcerative colitis was well controlled. (*Id.* at 584-85.) Indeed, these notes, and the doctor's other recorded observations contradict Dr. Smith's opinion regarding the severity of Plaintiff's ulcerative colitis and her assessment on the extent to which this condition would cause Plaintiff to be off task each day. (*See, e.g.*, *id.* at 368 ("in last 2-3 months his ulcerative colitis has been under control. . . . His ulcerative colitis is quiescent"); 377 ("He states his ulcerative colitis is under control with Asacol . . . It seems that health-wise and functionality, things are in order").) Because the ALJ provided a specific and legitimate reason, supported by substantial evidence, for giving little weigh to the opinions of Plaintiff's treating physicians, the ALJ did not err.[4]

**C. The ALJ Did Not Err in Rejecting Symptom Testimony**

Plaintiff contends that the ALJ erred in weighing Plaintiff's symptom testimony because the reasons provided by the ALJ for discounting Plaintiff's subjective complaints were not supported by clear and convincing evidence. (Doc. 13 at 20-22.) In evaluating a claimant's testimony regarding subjective pain or other symptoms, the ALJ must engage in a two-step analysis. First, the ALJ determines whether the claimant presented objective medical evidence of an impairment that reasonably could be expected to produce some

---

[4] Plaintiff challenges the ALJ's rationale, arguing that she mischaracterized the records. In support, Plaintiff points out select medical records that reflect more severe symptoms. The Court disagrees. According to the ALJ, severe symptoms appear only sporadically, and primarily after periods of non-compliance with provider recommendations. (A.R. 24.) "Where evidence is susceptible to more than one rational interpretation," as it is here, "it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

degree of the symptoms alleged.  Second, if the claimant makes this showing and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The Court need not uphold all of the ALJ's reasons for discrediting a claimant, so long as substantial evidence supports the ALJ's decision.  *See e.g.*, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (A.R. at 21.)  Therefore, the ALJ was required to articulate clear and convincing reasons for discounting the testimony.  She did so here.

First, the ALJ found that the medical evidence indicates "relatively stable and controlled symptoms with the prescribed treatment regimen."  (*Id.*)  This reason is clear and convincing.  *See Benear v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-4160-PHX-JAT, 2019 WL 258345, at *19 (D. Ariz. Jan. 18, 2019).  It also is supported by substantial evidence.  (*See, e.g.*, A.R. 350 ("ulcerative colitis is in remission"), 364 ("dramatic improvement"), 366 ("markedly improved"), 368 ("ulcerative colitis has been under control"), 534 ("has not had any flares in a long time").)  Second, the ALJ discounted Plaintiff's subjective complaints because they were inconsistent with his activity level, which included driving regularly, completing activities of daily living, and engaging in regular exercise at the gym.  (A.R. 21.)  This reason also is clear and convincing, s*ee Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), and supported by substantial evidence, (*See, e.g.*, A.R. 57, 60-62, 256-59, 369).[5]

Finally, the ALJ contends that "despite [Plaintiff's] allegations of neck pain and incontinence," he sat through a lengthy medical examination without signs of pain or need

---

[5] The primary impact of Plaintiff's ulcerative colitis on his daily activities is that he requires restroom access on short notice.  This limitation was accommodated by the ALJ in Plaintiff's RFC.

to use the restroom. (A.R. at 21.) Plaintiff correctly points out that the medical examination in question, predates the inception of Plaintiff's neck pain, and not needing to use the restroom during a 40-minute examination is insufficient evidence that his ulcerative colitis is well managed because the condition presents intermittently. The Court agrees, but even without this rationale there remains substantial evidence supporting the ALJ's decision in light of the other reasons given by the ALJ for Plaintiff's lack of credibility and the objective medical evidence on which the ALJ relied. Any error the ALJ might have committed with respect to his third reason therefore was harmless. *See Batson*, 359 F.3d at 1197.

**IV. Conclusion**

The ALJ's decision is free of harmful legal error and supported by substantial evidence. Therefore,

**IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**. The Clerk of the Court shall terminate this case.

Dated this 20th day of March, 2019.


Douglas L. Rayes
United States District Judge